UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JESSICA FOYER, an individual; and JASON FOYER, an individual,<br><br>                                    Plaintiffs,<br><br>v.<br><br>WELLS FARGO BANK, N.A.; a business entity; and Does 1-50, inclusive,<br><br>                                    Defendants. | Case No.: 3:20-CV-00591-GPC-AHG<br><br>**ORDER DENYING IN PART AND GRANTING IN PART DEFENDANT'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT.**<br><br>**[ECF No. 9.]** |

Before the Court is Defendant Well Fargo Bank, N.A.'s ("Defendant") motion to dismiss Plaintiffs Jessica and Jason Foyer's ("Plaintiffs") first amended complaint ("FAC") which alleges six causes of action under California state law. Based on the FAC, the moving papers, and applicable law, Defendant's motion as to the Fourth and Fifth causes of action is **GRANTED WITHOUT PREJUDICE**. The motion is **DENIED** as to the First, Second, Third, and Sixth causes of action.

/ / /

/ / /

/ / /

1

## I. Background

### A. Procedural Background

The case was originally filed in state court and removed to federal court on March 30, 2020. (ECF No. 1.)[1] On April 27, 2020, Plaintiffs filed the FAC. (ECF No. 7.) The FAC asserts six causes of action: (1) violation of Civil Code § 2924; (2) violation of Civil Code § 2923.7; (3) violation of Civil Code § 2923.6; (4) violation of Business & Professions Code § 17200; (5) breach of implied covenant of good faith and fair dealing; and (6) negligence.

On May 11, 2020, Defendant filed the motion to dismiss. (ECF No. 9.) On May 29, 2020, Plaintiffs filed a response. (ECF No. 11.) On June 5, 2020, Defendant filed a reply. (ECF No. 12.)

### B. California's Non-Judicial Foreclosure Process

"The financing or refinancing of real property in California is generally accomplished by the use of a deed of trust." *Rossberg v. Bank of Am., N.A.*, 219 Cal. App. 4th 1481, 1491 (2013), *as modified on denial of reh'g* (Sept. 26, 2013) (quotations omitted). "A deed of trust to real property acting as security for a loan typically has three parties: the trustor (borrower), the beneficiary (lender), and the trustee." *Yvanova v. New Century Mortg. Corp.*, 62 Cal. 4th 919, 926–27 (2016). "The trustee holds a power of sale. If the debtor defaults on the loan, the beneficiary may demand that the trustee conduct a nonjudicial foreclosure sale." *Id.* (quotation omitted).

---

[1] If a plaintiff files a civil action in state court, the defendant may remove that action to a federal district court if the district court has original jurisdiction over the matter. 28 U.S.C. § 1441(a). Here, Defendant removed Plaintiffs' state court suit on March 30, 2020. (ECF No. 1.) The Court has diversity question jurisdiction. *See* 28 U.S.C. § 1332(a). Plaintiffs are citizens of California, (FAC at ¶ 4), and Defendant contends without opposition from Plaintiffs that it is a citizen of North Dakota, the state in which its main office is located. (ECF No. 1 at 3.)

2

"Sections 2924 through 2924k provide a comprehensive framework for the regulation of a nonjudicial foreclosure . . ." *Banc of Am. Leasing & Capital, LLC v. 3 Arch Tr. Servs., Inc.*, 180 Cal. App. 4th 1090, 1096 (2009). The trustee starts the nonjudicial foreclosure process by recording a notice of default and election to sell. Cal. Civ. Code § 2924(a)(1). After a three-month waiting period, and at least 20 days before the scheduled sale, the trustee may publish, post, and record a notice of sale. Cal. Civ. Code §§ 2924(a)(2), 2924f(b). If the sale is not postponed and the borrower does not exercise his or her rights of reinstatement or redemption, the property is sold at auction to the highest bidder. Cal. Civ. Code § 2924g(a). This comprehensive scheme effectuates three purposes: (1) providing the lender with a quick, inexpensive, and efficient remedy against a defaulting borrower; (2) protecting the borrower from wrongful loss of the property; and (3) ensuring that a properly conducted sale is final between the parties and conclusive as to a bona fide purchaser. *Rossberg*, 219 Cal. App. 4th at 1491.

## C. California's Homeowners' Bill of Rights ("HBOR")

Passed in 2012, and effective as of January 1, 2013, the HOBR "modif[ies] the foreclosure process to ensure that borrowers who may qualify for a foreclosure alternative are considered for, and have a meaningful opportunity to obtain, available loss mitigation options." *Lucioni*, 3 Cal. App. 5th at 157 (quotation omitted). The HOBR is intended to "ensure that, as part of the nonjudicial foreclosure process, borrowers are considered for, and have a meaningful opportunity to obtain, available loss mitigation options, if any, offered by or through the borrower's mortgage servicer, such as loan modifications or other alternatives to foreclosure." *Valbuena v. Ocwen Loan Servicing, LLC*, 237 Cal. App. 4th 1267, 1272 (2015), *as modified* (June 19, 2015) (quoting Cal. Civ. Code § 2923.4)).

"In the HBOR, the Legislature enacted two statutory provisions—sections 2924.12(a)(1) and 2924.19(a)(1)—that allow a borrower to enjoin a foreclosure when a

3

lender violates other specified HBOR sections." *Lucioni v. Bank of Am., N.A.*, 3 Cal. App. 5th 150, 157 (Ct. App. 2016) (quotation omitted). These provisions create a private right of action for certain violations of HBOR, including California Civil Code §§ 2923.6 (dual tracking), 2923.7 (single point of contact), 2924.10 (acknowledgment of receipt), and 2924.17 (verification of documents). *See* Cal. Civ. Code § 2924.12(a)(1).

### D. Plaintiffs' Factual Allegations

Plaintiffs are the owners of a single-family home located at 706 Steffy Road, Ramona, California 92065 (the "Property"). (FAC at ¶ 9.) The Property serves as Plaintiffs' primary residence. (FAC at ¶ 9.) On June 2012, Plaintiffs obtained a first lien mortgage loan secured by the Property by executing a promissory note and deed of trust in favor of Prospect Mortgage, LLC in the amount of $662,774.00. (FAC at ¶ 10.) Defendant has since become the beneficiary and servicer of the loan. (FAC at ¶ 10.) In 2019, Plaintiffs fell behind in their mortgage payments. (FAC at ¶ 11.)

On or around May 29, 2019, Plaintiffs submitted a "complete loan modification application" to the Defendant. (FAC at ¶ 12.) On or around June 11, 2019, Plaintiffs received an email from Defendant's employee, Selina, who then became Plaintiffs' "single point of contact" at Defendant. (FAC at ¶ 13.) Selina informed Plaintiffs that underwriting needed additional documents and Plaintiffs submitted these documents on June 12, 2019. (FAC at ¶ 13.) Over the next two weeks, Plaintiffs unsuccessfully attempted to reach Selina by phone multiple times. (FAC at ¶ 14.) Plaintiffs also emailed asking about the status of the loan modification and advising that they could not leave voice messages because the voicemail inbox was full. (FAC at ¶ 14.)

On July 11, 2019, Plaintiffs banking portal displayed a status of "No Open Items" as to the pending modification and listed the foreclosure status as "Suspended." (FAC at ¶ 15.) However, by July 23, 2019, that status changed to "Active." (FAC at ¶ 16.) Plaintiffs called and e-mailed Selina, whose voicemail inbox remained full, to explain

that two months after submitting a loan modification application, and after being "asked to re-submit the same documents multiple times," the banking portal foreclosure status was now "Active." (FAC at ¶ 17.) Instead of hearing from Selina directly, Plaintiffs received multiple messages through the banking portal that requested additional documents be submitted. (FAC at ¶ 18.) Plaintiffs "immediately" complied and, on July 31, 2019, the foreclosure status was changed back to "Suspended." (FAC at ¶ 18.)

On August 1, 2019, Plaintiffs received an email listing several more documents needed for the loan modification review. (FAC at ¶ 19.) Plaintiffs complied and uploaded the requested documents through the banking portal. (FAC at ¶ 19.) On August 14, 2019, Plaintiffs received an automated email message from the banking portal stating the requested documents had been received and were being reviewed. (FAC at ¶ 19.) However, on August 20, 2019, Defendant again asked Plaintiffs to provide more documents. (FAC at ¶ 20.) As requested, Plaintiffs uploaded more documents through the banking portal. (FAC at ¶ 20.)

About three months later, on October 2, 2019, Defendant's underwriters requested additional documents. (FAC at ¶ 21.) Plaintiffs then submitted these documents, both through the portal and via email directly to the single point of contact. (FAC ¶ 21.) Defendant did not acknowledge receiving these materials. (FAC ¶ 22.)

Instead, nearly two months after that, Defendant recorded a notice of trustee's sale against the Property on November 27, 2019, initially setting the sale for January 17, 2020. (FAC ¶ 22; ECF No. 9-2 at 24.) On January 7, 2020, the single point of contact confirmed receipt of all the documents that were submitted in October 2020 and stated they were under review. (FAC at ¶ 23.)

On January 9, 2020, Plaintiffs checked the bank portal and found that (1) Defendant had again listed more documents to be uploaded, (2) the foreclosure was listed as "Suspended," and (3) the trustee's sale date remained January 17, 2020. (FAC at ¶ 24.)

Plaintiffs reached out to the single point of contact, who confirmed that the sale would not proceed and that it would take "a few days" to review the submitted documents. (FAC at ¶ 25.) On January 10, 2020, the banking portal again listed additional documents to be submitted, though confusingly the "foreclosure status remained at 'Suspended' and the sale date remained as January 17, 2020." (FAC at ¶ 26.) On January 13, 2020, the single point of contact informed Plaintiffs that "even more documents were needed for review," and that Plaintiffs should "call the Trustee handling the foreclosure sale for confirmation that the sale would not proceed." (FAC at ¶ 27.)

On January 14, 2020, another employee of Wells Fargo, Mr. David Mayers, contacted the Plaintiffs with another list of documents needed for review. (FAC at ¶ 29.) This list "consisted primarily of the same documents Plaintiffs previously submitted." (FAC at ¶ 29.) Plaintiffs nonetheless submitted the documents again on January 15, 2020. (FAC at ¶ 30.) On January 16, 2020, the online banking portal changed the foreclosure status to "Suspended" with no sale date listed. (FAC at ¶ 31.)

On January 17, 2020, Plaintiffs called the trustee to discuss the status of the sale per the recommendation of their single point of contact. (FAC at ¶¶ 27, 28.) The trustee assured the Plaintiffs the Property would not be sold on January 17, 2020 and informed them the Property would be sold on February 14, 2020. (FAC at ¶ 28.) The trustee did not confirm the latter date in writing until after January 17, 2020. (FAC at ¶ 28.)

On January 23, 2020, the online portal once again listed several documents for the Plaintiffs to upload. (FAC at ¶ 32.) The foreclosure status had been changed back to "Active." (FAC at ¶ 32.) Plaintiffs allege that they "were perplexed" because the requested documents were "the same documents that Plaintiffs had submitted following the January 14, 2020 communication." (FAC at ¶ 32.) So, Plaintiffs reached out to the single point of contact the next day to ask if they needed to do something else as the

6

banking portal did not indicate that Defendant was reviewing the documents uploaded the previous week and instead indicated the foreclosure was active. (FAC at ¶ 33.)

On January 26, 2020, Defendant's single point of contact responded to Plaintiffs' email regarding the document status in the portal by, once again, asking for more documents. (FAC at ¶¶ 33, 34.) Defendant once again requested "the same documents that Plaintiffs had already submitted." (FAC at ¶ 34.) On January 30, 2020, Defendant advised Plaintiffs that some documents previously submitted needed to be resubmitted and signed a specific way. (FAC at ¶ 35.) Plaintiffs complied and resubmitted the documents that same day. (FAC at ¶ 35.)

On February 3, 2020, Plaintiffs observed that the online portal confusingly listed the foreclosure as "Suspended" but also indicated that a trustee's sale date was scheduled for February 14, 2020. (FAC at ¶ 36.) Plaintiffs inquired the next day about the status of the document submission, pointing out the fact that these documents were not showing as "received" in the portal. (FAC at ¶ 37.) The single point of contact told Plaintiffs that nothing was being requested of them at this time and that the process of review could take 7 to 10 business days. (FAC at ¶ 37.) Then, two days later, the single point of contact asked Plaintiffs to provide more documents for underwriting, and again Plaintiffs promptly complied. (FAC at ¶ 38.)

In sum, Plaintiffs allege that despite the "ongoing loan modification application process and the numerous, voluminous and repeated requests for additional documents, to which Plaintiffs fully complied, Defendants have continued to dual track Plaintiffs and have initiated foreclosure proceedings by recording a Notice of Trustee's Sale." (FAC at ¶ 39.) Plaintiffs further assert that, given the notice of sale, Defendant has failed to consider Plaintiffs for a loan modification application. (FAC at ¶ 39.)

///

///

## II.   Legal Standards

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Dismissal is warranted under Rule 12(b)(6) where the complaint lacks a cognizable legal theory. *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th Cir. 1984); *see Neitzke v. Williams*, 490 U.S. 319, 326 (1989) ("Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law."). Alternatively, a complaint may be dismissed where it presents a cognizable legal theory yet fails to plead essential facts under that theory. *Robertson*, 749 F.2d at 534. While a plaintiff need not give "detailed factual allegations," a plaintiff must plead sufficient facts that, if true, "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) (quoting *Twombly*, 550 U.S. at 547). A claim is facially plausible when the factual allegations permit "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In other words, "the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

In reviewing a motion to dismiss under Rule 12(b)(6), the court must assume the truth of all factual allegations and must construe all inferences from them in the light most favorable to the nonmoving party. *Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir. 2002); *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996). Legal

8

conclusions, however, need not be taken as true merely because they are cast in the form of factual allegations. *Ileto v. Glock, Inc.*, 349 F.3d 1191, 1200 (9th Cir. 2003); *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981). When ruling on a motion to dismiss, a court may consider the facts alleged in the complaint, documents attached to the complaint, documents relied upon but not attached to the complaint when authenticity is not contested, and matters of which the court takes judicial notice. *Lee v. Los Angeles*, 250 F.3d 668, 688–89 (9th Cir. 2001).

Where a motion to dismiss is granted, "leave to amend should be granted unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992) (quotation omitted). In other words, where leave to amend would be futile, the Court may deny leave to amend. *Id.* at 658.

## III.   Analysis

For the reasons explained below, the Court **GRANTS** Defendant's motion as to the Fourth and Fifth causes of action, and **DENIES** the motion as to the First, Second, Third, and Sixth causes of action.

### A. First Cause of Action: Cal. Civil Code §§ 2924b, 2924f.

First, the Court analyzes Plaintiffs' claim that Defendant failed to comply with the HBOR's notice requirements. Specifically, Plaintiffs allege that Defendant did not "post a copy of the Notice of Trustee's Sale to Plaintiffs' door" in violation of § 2924f(a)(3). (FAC at ¶ 42.) Plaintiffs also allege that Defendant did not "mail the Notice of the Trustee's Sale to the Plaintiffs" in violation of § 2923b(b)(2). (FAC at ¶ 43.) It appears that Plaintiffs incorrectly cite the relevant provisions of the Homeowners' Bill of Rights. The Court construes Plaintiffs' citations to "§ 2924f(a)(3)" and "§ 2923b(b)(2)" as citations to § 2924f(b)(3) and § 2924b(b)(2), respectively. (*See* FAC at ¶¶ 42, 43.)

1    Defendant argues that Plaintiffs fail to state a mailing violation because it complied

2    with § 2924b(e), which requires any person subject to § 2924b(b) or § 2924b(c) to

3    "execute and retain an affidavit identifying the notice mailed, showing the name and

4    residence or business address of that person, that he or she is over 18 years of age, the

5    date of deposit in the mail, the name and address of the trustor or mortgagor to whom

6    sent, and that the envelope was sealed and deposited in the mail with postage fully

7    prepaid." Cal. Civ. Code § 2924b(e). Defendant submits two sworn declarations by Mr.

8    Ron Llewellyn attesting that the respective notices were mailed to each Plaintiff. (*See*

9    ECF No. 9-1 at 10–12; ECF No. 9-2, Exs. E, F.) Defendant also argues it complied with §

10   2924f by posting the notice of sale to a "conspicuous place on the property" and submits

11   Mr. James Rudolph's sworn "Certificate of Posting Property and Public Place" to show

12   compliance. (ECF No. 9-1 at 11; ECF No. 9-2, Ex. E at 38–39.)

13   Plaintiffs respond that it would be "improper" for the Court to take judicial notice

14   of Defendant's declarations at the pleading stage. (ECF No. 11 at 11.) And, in reply,

15   Defendants argue that, because "no fraud cause of action"[2] was alleged, "the mere

16   existence of [the declarations] conclusively establish notices were provided." (ECF No.

17   12 at 7.) Defendants further claim that Plaintiffs concede the First Cause of Action fails

18   should the Court take judicial notice of the declarations. (ECF No. 12 at 8.)

19   Thus, the Court must first determine whether it can take judicial notice of the

20   documents relied on by Defendant and, if so, whether those documents establish that

21   Plaintiffs have failed to plead a claim for which relief can be granted.

22   / / /

---

[2] Defendant's assertion is at odds with the FAC. Plaintiffs appear to allege fraud by (1) contesting the authenticity of the declarations and (2) expressly stating "Defendants are also guilty of malice, fraud and/or oppression, as defined in California Civil Code § 3294. Defendants' actions were malicious and willful and in conscious disregard of the rights and safety of Plaintiffs in that the actions were calculated to injure Plaintiffs." (FAC at ¶ 46.)

### 1. Judicial Notice of Defendants' Declarations.

Under the Federal Rules of Evidence, the Court may "judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Hence, "as a general rule, a district court . . . may take judicial notice of matters of public record and may consider them without converting a Rule 12 motion into one for summary judgment." *United States v. 14.02 Acres of Land*, 547 F.3d 943, 955 (9th Cir. 2008).

Here, as Plaintiffs acknowledge, Defendant recorded the relevant notices of trustees' sale. (FAC ¶¶ 22, 39, 41, 56, 76.) Consequently, the notices are judicially noticeable as "matters of public record." *Ortiz v. Accredited Home Lenders, Inc.*, 639 F. Supp. 2d 1159, 1163 (S.D. Cal. 2009); *accord Haynish v. Bank of Am., N.A.*, 284 F. Supp. 3d 1037, 1046 (N.D. Cal. 2018); *Gardner v. Am. Home Mortg. Servicing, Inc.*, 691 F. Supp. 2d 1192, 1196 (E.D. Cal. 2010). The Court **HEREBY TAKES** judicial notice of the notices of trustees' sale. (*See* ECF No. 9-2 at 30–37, 48–49.)

In contrast, the declarations are not judicially noticeable. It is not alleged that Mr. Llewellyn's declarations were publicly recorded. The FAC also does not refer to the declarations, and thus they cannot be "incorporated by reference." *See Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994), *overruled on other grounds by Galbraith v. Cty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002) (holding that "documents whose contents are alleged in a complaint and whose authenticity no party questions . . . may be considered in ruling on a Rule 12(b)(6) motion to dismiss"). Plaintiffs, moreover, "hotly contest the authenticity" of the declarations. (ECF No. 11 at 11.) Consequently, the Court **DOES NOT TAKE** judicial notice of Mr. Llewelyn's declarations. (ECF No. 9-2 at 27–28, 41–46.) For these same reasons, the Court also **DOES NOT** take judicial notice of Mr. Rudolph's "Certificate of Posting Property and Public Place." (ECF No. 9-2 at 38–39.)

**2.   Analysis of Factual Allegations Under §§ 2924f, 2924b.**

Because the Court does not take judicial notice of Mr. Llewelyn or Mr. Rudolph's documents, the Court does not consider their impact on Plaintiffs' Complaint. In the absence of these declarations, Defendant's arguments claiming that Cal. Civ. Code § 2924b(e) has been satisfied, and that the notices were adequately posted and mailed, fail at this time.

Under § 2924b(b), a trustee proceeding with a nonjudicial foreclosure must give notice of a sale to "the trustor or mortgagor at his or her last known address if different than the address specified in the deed of trust." *Estate of Yates*, 25 Cal. App. 4th 511, 518 (1994). More specifically, a mortgagee or trustee "shall . . . [a]t least 20 days before the date of sale, deposit or cause to be deposited in the United States mail an envelope, sent by registered or certified mail with postage prepaid, containing a copy of the notice [of sale] with the recording date shown thereon . . ." Cal. Civ. Code § 2924b(b)(2). Here, Plaintiffs allege that "Defendants failed to do so." (FAC at ¶ 43.) Consequently, Plaintiffs plead a violation of the statute.

Likewise, under § 2924f, "copy of the notice of sale shall also be posted in a conspicuous place on the property to be sold at least 20 days before the date of sale, where possible and where not restricted for any reason." Cal. Civ. Code § 2924f(b)(3). "If the property is a single-family residence the posting shall be on a door of the residence, but, if not possible or restricted, then the notice shall be posted in a conspicuous place on the property." *Id.* "[I]f access is denied because a common entrance to the property is restricted by a guard gate or similar impediment, the property may be posted at that guard gate or similar impediment to any development community." *Id.* Here, Plaintiffs plead that "Defendants failed to do this by never posting the Notice of Trustee's Sale on Plaintiffs' door." (FAC at 42.) Thus, Plaintiffs again plead a violation of the statute.

Accordingly, the Court **DENIES** the motion as to Plaintiffs' First Cause of Action.

12

### B. Second Cause of Action: Cal. Civil Code § 2923.7.

Next, the Court analyzes whether Plaintiffs state a claim that Defendant violated the "single point of contact" ("SPOC") rule. Under § 2923.7, the HBOR provides that, upon receiving a borrower's request[3] for a foreclosure preventative alternative, the mortgage servicer "shall promptly establish a single point of contact and provide to the borrower one or more direct means of communication with the single point of contact." Cal. Civ. Code § 2923.7(a); *see also Green v. Cent. Mortg. Co.*, 148 F. Supp. 3d 852, 873 (N.D. Cal. 2015). The SPOC "shall be responsible for doing all of the following,"

> (1) Communicating the process by which a borrower may apply for an available foreclosure prevention alternative and the deadline for any required submissions to be considered for these options.

> (2) Coordinating receipt of all documents associated with available foreclosure prevention alternatives and notifying the borrower of any missing documents necessary to complete the application.

> (3) Having access to current information and personnel sufficient *to timely, accurately, and adequately inform* the borrower of the current status of the foreclosure prevention alternative.

> (4) Ensuring that a borrower is *considered for all foreclosure prevention alternatives* offered by, or through, the mortgage servicer, if any.

> (5) Having access to individuals with the ability and authority to stop foreclosure proceedings when necessary.

Cal. Civ. Code § 2923.7(b)(1)–(5) (emphasis added).

---

[3] Plaintiffs do not allege specifically requesting a single point of contact. They merely allege that one was assigned. (FAC at ¶ 13.) However, "[o]nce a 'mortgage servicer . . . promptly establish[es] a single point of contact,' Cal. Civ. Code § 2923.7(a), under HBOR, that contact is subject to the remaining mandates of section 2923.7(b)-(e); nothing in the statute indicates that further requests for service are required. Holding otherwise would require borrowers to engage in an absurd endeavor—requesting a single point of contact already assigned—to ensure that their contact is required to follow the mandates of HBOR." *Travis v. Nationstar Mortg., LLC*, 733 F. App'x 371, 374–75 (9th Cir. 2018).

3:20-CV-00591-GPC-AHG

Here, Plaintiffs allege that they filed a loan modification application on May 29, 2019 and were then first contacted by their SPOC on June 11, 2019. (FAC at ¶¶ 12–13.) Plaintiffs "attempted to contact their single point of contact numerous times via email and telephone between May 31, 2019 and February 10, 2020." (FAC at ¶ 50.) However, during that process, Plaintiffs allege that they were unable to leave voice messages because their contact's inbox was full, (FAC at ¶¶ 14, 17), waited for weeks or months for a response even after relaying their messages by e-mail, (FAC at ¶¶ 14, 20–22, 33, 34), received vague or contradictory information from the SPOC, (FAC at ¶¶ 26, 32, 36, 50), had to go outside their single point of contact to obtain information, (FAC at ¶¶ 27–29), and were asked numerous times to duplicative materials. (FAC at ¶¶ 17, 29, 32, 34.) Plaintiffs detail these exchanges in the FAC's factual allegations. (FAC at ¶¶ 13–39.) Plaintiffs, moreover, allege that Defendant failed to adequately advise Plaintiffs of the status of their loan modification application or consider Plaintiffs for all foreclosure prevention alternatives in the light of this conduct. (FAC at ¶ 51.)

The Court finds that the First Amended Complaint adequately states a claim under § 2923.7 by alleging a pattern of events which, if proven true, could reasonably establish Defendant did not "timely, accurately, and adequately inform the borrower of the current status of the foreclosure prevention alternative." Cal. Civ. Code § 2923.7(b)(3). More specifically, Plaintiffs allege a pattern of untimely and inadequate responses as to the status of their loan modification application, including many requests for additional and/or duplicative documents from their SPOC, confusing changes to the online status of their application, repeated delays in communication, and conversations with people other than their SPOC. (FAC ¶¶ 13–30); *cf. Hestrin v. CitiMortgage, Inc.*, No. 2:14-CV-9836-SVW, 2015 WL 847132, at *4 (C.D. Cal. Feb. 25, 2015) (noting in dismissing a § 2923.7 claim where there was "no indication that CitiMortgage has evaded" the plaintiff). Plaintiffs buttress their allegations with references to specific dates, e-mails, and banking

14

portal statuses, as well by reference to specific employees of the Defendant. (*Id.*); *cf. Shupe v. Nationstar Mortg. LLC*, 231 F. Supp. 3d 597, 603 (E.D. Cal. 2017) (holding that § 2923.7 claim lacked specificity when plaintiffs failed to note "*who*[] was assigned as their representatives or *when* [p]laintiffs attempted to contact their assigned representatives.") (emphasis added). Plaintiffs, moreover, allege with specificity that they received vague and contradictory information on several occasions, (FAC at ¶¶ 28, 33, 37, 50), which may give rise to a claim under the SPOC rule. *See Green v. Cent. Mortg. Co.*, 148 F. Supp. 3d 852, 875 (N.D. Cal. 2015) (denying motion to dismiss § 2923.7 claim given plaintiff's allegations that the defendant's "representatives gave her conflicting information" even while acknowledging that they received, processed, and denied two loan modification applications).

Defendant's contentions to the contrary, moreover, are inapposite. It is irrelevant for the purposes of stating a claim that Defendant complied with some portions of § 2923.7 by, for example, providing Plaintiffs with access to an SPOC who had the "ability and authority" to stop foreclosure proceedings.[4] (ECF No. 12 at 19.) Afterall, § 2923.7(b) commands that the SPOC "shall be responsible for doing *all* of" the duties enumerated in the statute. Cal. Civ. Code § 2923.7(b) (emphasis added). Likewise, the Court is unimpressed with the assertion that Plaintiffs' allegations show Defendant's compliance with § 2923.7, including by keeping Plaintiffs appraised of the status of their application, (ECF No. 9-1 at 14; ECF No. 12 at 9), and considering Plaintiffs "for a modification at the very least." (ECF No. 9-1 at 15.) If true, Plaintiffs' allegations would establish that Defendant failed to complete a review Plaintiffs' application – even after ten months had

---

[4] Also, if true, Plaintiffs' allegations may undermine that assertion insofar as Plaintiffs were instructed to speak with the trustee directly to ensure the sale did not go forward, and where Plaintiffs were contacted by an employee of the Defendant other than their SPOC shortly before the intended sale date. (FAC at ¶¶ 27–29.)

1   passed from its initial submission in May 2019 to February 2020 – while the SPOC

2   allegedly requested multiple duplicative documents, routinely delayed communicating

3   with the Plaintiffs, and at times provided "vague or contradictory" information. Finally,

4   the absence of factual allegations beyond February 2020 does not doom the complaint as

5   Defendant alleges. (ECF No. 11 at 14.) All in all, the Court finds "[t]his holding is not

6   only in line with the intended purpose of Section 2923.7—preventing borrowers from

7   being given the run around—but also consistent with the language of the statute." *Nasseri*

8   *v. Wells Fargo Bank, N.A.*, 147 F. Supp. 3d 937, 944 (N.D. Cal. 2015).

9          In addition, Plaintiffs' second cause of action does not fail for lack of materiality.

10  As Plaintiffs observe, courts do not uniformly treat materiality as a pleading requirement.

11  Some courts choose to treat it as a question of fact not properly decided on a motion to

12  dismiss. (ECF No. 11 at 15–16); *compare also Shupe*, 231 F. Supp. 3d at 603 (noting that

13  § 2923.7 is actionable only when that violation is material) *with Haynish v. Bank of Am.,*

14  *N.A.*, 284 F. Supp. 3d 1037, 1047 (N.D. Cal. 2018) ("Whether a violation is material is a

15  factual matter that is not appropriate for a motion to dismiss.") The Court will treat

16  materiality as a factual question and not create an additional pleading hurdle for litigants

17  in the "absence of any [statutory or binding] authority defining the meaning of a 'material

18  violation.'" *Haynish*, 284 F. Supp. 3d at 1047 (quoting *Greene v. Wells Fargo Bank,*

19  *N.A.*, No. C-15-00048 JSW, 2015 WL 2159460, at *3 (N.D. Cal. May 7, 2015)). That

20  interpretation best aligns with the HBOR's purpose of "ensur[ing] that, as part of the

21  nonjudicial foreclosure process, borrowers are considered for, and have a meaningful

22  opportunity to obtain, available loss mitigation options . . ." Cal. Civ. Code § 2923.4.

23         Nonetheless, even if materiality were required at the pleading stage, Plaintiffs'

24  allegations readily show that Defendant's conduct "affected . . . the modification

25  process." *Cornejo v. Ocwen Loan Servicing, LLC*, 151 F. Supp. 3d 1102, 1113 (E.D. Cal.

26  2015). Here, Plaintiffs allege that Defendants' untimely and inadequate responses to their

27

28

16

application have caused a ten month delay in processing the application, such that Defendant has since recorded notices of default and of sale on the Property, (FAC at ¶¶ 13–30, 48–51), and that is sufficient to allege materiality. *See Hsin-Shawn Sheng v. Select Portfolio Servicing, Inc.*, No. 2:15-CV-0255-JAM, 2015 WL 4508759, at *3 (E.D. Cal. July 24, 2015) (finding that plaintiffs' allegations were material because, if true, they would show that defendants' "belated" or non-existent responses to plaintiffs' document submissions slowed the modification process).

Finally, contrary to Defendant's contentions, Plaintiffs' § 2923.7 claim does not fail for lack of a remedy. (ECF No. 9-1 at 15–17.) Defendant is correct that monetary relief is unavailable at this time because no deed of sale has been recorded.[5] *Shupe*, 231 F. Supp. 3d at 603. Plaintiffs, however, may be entitled to injunctive relief if a foreclosure sale is "pending." *See Tobin v. Nationstar Mortg., Inc.*, No. 16-CV-00836-CAS, 2016 WL 1948786, at *11 (C.D. Cal. May 2, 2016); *see* Cal. Civ. Code § 2924.12 (providing that, if a trustee's deed upon sale has not been recorded, a borrower may bring an action for injunctive relief to enjoin a material violation of Section 2923.7). Plaintiffs plead as much in stating they are "entitled to injunctive relief" and that a foreclosure sale is "imminent." (FAC at ¶¶ 52, 70.)

For the foregoing reasons, Defendant's motion to dismiss the Second Cause of Action alleging a violation of § 2923.7 is **DENIED**.

---

[5] For this same reason, Defendant's repeated citations to cases considering claims alleging a violation *after* a trustee's deed upon sale has been recorded under § 2924.12(b) are inapposite with respect to Plaintiffs' claims alleging a violation *before* a trustee's deed upon sale has been recorded under § 2924.12(a). (ECF No. 12 at 13–14; ECF No. 9-1 at 15–26); *see Heflebower v. JPMorgan Chase Bank, NA*, No. 1:12-CV-1671-AWI, 2014 WL 897352, at *12 (E.D. Cal. Mar. 6, 2014); *Rockridge Tr. v. Wells Fargo NA*, No. 13-CV-01457-JCS, 2014 WL 688124, at *21 (N.D. Cal. Feb. 19, 2014). In light of the statutory provisions' plain language, claims arising under the private right of action conferred by § 2924.12(b) require a showing of "actual economic damages," while claims arising under the private right of action conferred by § 2924.12(a) do not. *Compare* Cal. Civ. Code § 2924.12(b) *with* Cal. Civ. Code § 2924.12(a).

### C. Third Cause of Action: Cal. Civil Code § 2923.6(f)

Next, the Court analyses whether Plaintiffs state a claim that Defendant violated the prohibition on "dual tracking" under § 2923.6.

To trigger the protection of § 2923.6, a borrower must first "submit[] a complete application for a first lien loan modification offered by, or through, the borrower's mortgage servicer at least five business days before a scheduled foreclosure sale." Cal. Civ. Code § 2923.6(c). A "mortgage servicer . . . shall not record a notice of default or notice of sale, or conduct a trustee's sale, while the complete first lien loan modification application is pending." *Id.* A servicer cannot "record a notice of default or notice of sale or conduct a trustee's sale until" one of three circumstances transpire:

> (1) The mortgage servicer makes a written determination that the borrower is not eligible for a first lien loan modification, and any appeal period pursuant to subdivision (d) has expired.
>
> (2) The borrower does not accept an offered first lien loan modification within 14 days of the offer.
>
> (3) The borrower accepts a written first lien loan modification, but defaults on, or otherwise breaches the borrower's obligations under, the first lien loan modification.

Cal. Civ. Code § 2923.6(c)(1)–(3).

"[A]n application shall be deemed 'complete' when a borrower has supplied the mortgage servicer with all documents required by the mortgage servicer within the reasonable timeframes specified by the mortgage servicer." Cal. Civ. Code § 2923.6(h). The "statute defines completeness by when the borrower has supplied the required documents to the mortgage servicer, not when the mortgage servicer completes its review and acknowledges that no further documents are required." *Mace v. Ocwen Loan Servicing, LLC*, 252 F. Supp. 3d 941, 946 (N.D. Cal. 2017). The "clear implication of section 2923.6(h) is that a mortgage servicer must tell the borrowers in advance what documents are required and specify 'reasonable timeframes' for the submission of those

18

documents." *Di Loreto v. Chase Manhattan Mortg. Corp.*, No. 17-CV-05187-CW, 2017 WL 5569834, at *5 (N.D. Cal. Nov. 20, 2017) (quoting *Mace*, 252 F. Supp. 3d at 946). If a borrower complies with those initial requirements, the "application is complete." *Id.*

Together, these provisions "prevent[] foreclosure proceedings from being conducted while a borrower is engaged in the process of seeking a loan modification." *Gilliam v. Bank of Am., N.A.*, No. SA-CV-17-1296-DOC, 2018 WL 6537160, at *24 (C.D. Cal. June 22, 2018). "The dual-tracking provision . . . is intended to prevent borrowers from being given the run around, being told one thing by one bank employee while something entirely different is being pursued by another." *Jolley v. Chase Home Finance, LLC*, 213 Cal. App. 4th 872, 905 (2013).

Defendant moves to dismiss Plaintiffs' "dual tracking" cause of action on the basis that the Complaint lacks "robust factual allegations demonstrating that the [lien loan modification] application was complete." (ECF No. 9-1 at 13–14 (citing *Stokes v. CitiMortgage, Inc.*, 2014 U.S. Dist. LEXIS 125655, at *20 (C.D. Cal. Sept. 3, 2014))). Defendant asserts that Plaintiffs' claim fails because they have continued to provide additional documents at Defendant's requests as recently as February 2020 and allege nothing after that date. (ECF No. 9-1 at 14.) In response, Plaintiffs detail their application process and argue that Defendant's requests for "additional documents months after recording the [Notice of Trustee Sale] does not make the application incomplete as of the date the [Notice of Trustee Sale] was recorded." (ECF No. 11 at 13.)

Here, the Court finds that Plaintiffs state a claim under § 2923.6. First, Plaintiffs allege that they submitted "complete" loan modification applications to Defendant on May 29, 2019 and on October 2019. (FAC at ¶¶ 12, 56.) Plaintiffs further allege that Defendant "caused a Notice of Trustee's Sale to be recorded against Plaintiffs' property on November 27, 2019." (FAC at ¶¶ 22, 56.) Hence, as the Parties observe, the adequacy

of Plaintiffs' allegations hinges on whether Plaintiffs plausibly allege having submitted a "complete" application prior to the date Defendant recorded the notice of sale.

Plaintiffs have "plausibly alleged that [Defendant] recorded a Notice of [Sale] while he had a pending complete application for a loan modification." *Clinton v. Select Portfolio Servicing, Inc.*, 225 F. Supp. 3d 1168, 1176 (E.D. Cal. 2016). Here, as in *Clinton*, plaintiffs allege that they submitted a complete application by a certain date, "repeatedly respond[ing] to requests for updated materials and request[ing] acknowledgment of the completeness of [the] application[s]" for months, and ultimately seeing the defendant record a notice prior to recognizing the application as complete. *Id.* at 1176. And, while the *Clinton* plaintiffs allege a lengthier delay (sixteen months), the Court finds that distinction immaterial. *Id.* at 1174. Rather, given the detailed nature of Plaintiffs' allegations, including that (1) Defendant delayed acknowledging a complete application by requesting duplicative documents, (FAC at ¶¶ 17, 29, 32, 34), and (2) Defendant's multi-month delays in acknowledging Plaintiffs' submissions from August 2019 to October 2019 and from October 2019 to January 2020, (FAC at ¶¶ 20–23), the FAC alleges enough facts to plausibly plead the existence of a complete application at Plaintiffs' initial filing and/or sometime before Defendant recorded the notice of sale in November 2019. *Clinton*, 225 F. Supp. 3d at 1176. Moreover, the Court rejects Defendant's argument that complying with subsequent requests for documents precludes Plaintiffs from pleading that a complete application was filed. (ECF No. 9-1 at 14.) That reasoning would impermissibly "create a moving target" of the term "complete" and thus dilute the HBOR's prohibition on dual tracking. *Di Loreto*, 2017 WL 5569834, at *5.

The Court also finds Defendant's other arguments unconvincing. (ECF No. 9 at 12–15.) Defendant's allegation that the application was not complete is a legal conclusion and thus not dispositive. *See Hestrin v. CitiMortgage, Inc.*, No. 2:14-CV-9836-SVW, 2015 WL 847132, at *3 (C.D. Cal. Feb. 25, 2015) (concluding plaintiff submitted a

20

complete application even though the loan servicer later informed plaintiff that his application was incomplete). Defendant's cited precedents rely on conclusory pleadings less detailed than those at issue here. *Cf. Cornejo*, 151 F. Supp. 3d at 1111 (relying the conclusory allegation that plaintiffs' "[a]pplication was complete and is pled as such"); *Saridakis v. JPMorgan Chase Bank*, No. CV-14-06279-DDP, 2015 WL 570116, at *2 (C.D. Cal. Feb. 11, 2015) (relying the conclusory allegation that plaintiff "submitted a completed, legible and satisfactory loan modification application"); *Woodring v. Ocwen Loan Servicing, LLC*, No. CV-14-03416-BRO, 2014 WL 3558716, at *7 (C.D. Cal. July 18, 2014) (relying the conclusory allegation that plaintiff submitted "a multitude of completed first lien loan modification applications . . ."). *Stokes* also involves facts not applicable here. *See Stokes*, 2014 WL 4359193, at *7 (dismissing claim where plaintiffs did not allege including "all of the documentation that [Defendant] required" and instead alleged compliance with the Home Affordable Modification Program handbook). And, lastly, it is not true that a plaintiff can only allege a claim by stating "what documents were submitted." (ECF No. 9-1 at 14; ECF No. 12 at 10–11.) That requirement is not found in the language of the statute, is not supported with an express citation by the Defendant, and is contradicted by caselaw. *Cf., e.g.*, *Clinton*, 225 F. Supp. 3d at 1175–76 (permitting a § 2923.7 claim to survive a motion to dismiss without consideration of whether plaintiffs named, detailed, or attached to the complaint their specific documents); *Di Loreto*, 2017 WL 5569834, at *5–6 (same); *Mace*, 252 F. Supp. 3d at 946 (same).

For the foregoing reasons, Plaintiffs have adequately alleged a claim for "dual tracking" under § 2923.6(c). As with the § 2923.7 claim, the Court also finds that Plaintiffs' claim does not fail for lack materiality or a remedy. Even if materiality were a pleading requirement, Defendants' above-discussed conduct, if true, appears to have delayed consideration of Plaintiffs' loan modification beyond the date on which a notice of sale was recorded and Plaintiffs may seek injunctive relief for that violation. Cal. Civ.

Code § 2924.12(a). Accordingly, Defendant's motion to dismiss the Third Cause of Action is **DENIED**.

### D. Fourth Cause of Action: the UCL Claim

The Court next addresses Plaintiffs' allegations under California's Bus. & Prof. Code § 17200. Defendant argues that the UCL claim fails because (1) it depends on the success of Plaintiffs' other causes of actions and (2) Plaintiffs lack standing because "they did not suffer a loss of money or property or otherwise sustain an economic injury." (ECF No. 9 at 17–19; ECF No. 12 at 14–16.) Plaintiffs argue that, if any of the other causes of action survive, so should the UCL cause action and that standing is satisfied. (ECF No. 11 at 16–17.) In light of the following reasons, the Court finds that Plaintiffs fail to state a claim for which relief can be granted under the UCL.

### 1.   Stating a Claim Under the "Unlawful" Prong of the UCL.

The UCL prohibits "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising . . ." *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1103 (9th Cir. 2013), *as amended on denial of reh'g and reh'g en banc* (July 8, 2013). "Because Business & Professions Code § 17200 is written in the disjunctive, it establishes three varieties of unfair competition—acts or practices which are unlawful, or unfair, or fraudulent." *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999).

With respect to the UCL's "unlawful" prong, the Court considers whether Plaintiffs allege an unlawful business practice, i.e., anything that can be called a business practice and that is forbidden by law. *Ticconi v. Blue Shield of Cal. Life & Health Ins.*, 160 Cal. App. 4th 528, 539 (2008). Thus, the UCL incorporates violations of other laws and treats them as unlawful practices independently actionable under the UCL. *Id.*; *Chabner v. United of Omaha Life Ins. Co.*, 225 F.3d 1042, 1048 (9th Cir. 2000). And, absent any predicate violation of statute or common law, there is no basis for invoking

22

the UCL's "unlawful" prong. *Wasjutin v. Bank of Am., N.A.*, 732 F. App'x 513, 517 (9th Cir. 2018).

Here, Plaintiffs state that, "Defendants' violations of California Civil Code §§ 2923.6 and 2923.7 constitute unfair business practices in violation of California Business and Professions Code § 17200 *et seq.*" (FAC at ¶ 62.) Because Plaintiffs have sufficiently stated a claim under §§ 2923.6 and 2923.7 of the HOBR, Plaintiffs have also alleged a violation of the UCL's unlawful prong.

### 2.   Standing

Defendant's standing argument, however, is more persuasive. (ECF No. 9-1 at 18–19.) To have standing to sue under the UCL, a plaintiff must have "suffered injury in fact and [have] lost money or property as a result of the unfair competition." Cal. Bus. & Prof. Code § 17204. To satisfy this requirement, plaintiffs must "(1) establish a loss or deprivation of money or property sufficient to qualify as injury in fact, i.e., economic injury, and (2) show that the economic injury was the result of, i.e., caused by, the unfair business practice or false advertising that is the gravamen of the claim." *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 322 (2011).

Plaintiffs allege suffering harm, including "the imminent loss of their home," "loss of money and property, loss of reputation and goodwill, severe emotional distress, loss of appetite, frustration, fear, anger, helplessness, nervousness, anxiety, sleeplessness, sadness, and depression." (FAC at ¶¶ 63, 64.) Elsewhere, Plaintiffs also allege incurring "costs of suit, reasonable attorney's fees," and "the destruction of Plaintiffs' credit." (FAC ¶¶ 66, 70.) Plaintiffs allege these injuries are the "result of Defendants' wrongful conduct." (FAC at ¶ 63.) For the foregoing reasons, the Court finds Plaintiffs' allegations do not establish standing by failing to allege (1) causation, (2) that the harm amounts to "property or money," or (3) enough facts.

23

First, Plaintiffs' potential loss of their home is plainly a loss of property, but that loss cannot be fairly traced to Defendant's conduct. *See Toneman v. U.S. Bank, Nat'l Ass'n*, No. CV-12-09369-MMM, 2013 WL 12132049, at *22 (C.D. Cal. Oct. 21, 2013), *aff'd sub nom. Toneman v. U.S. Bank NA*, 628 F. App'x 523 (9th Cir. 2016). Here, "Plaintiffs fell behind in their mortgage payments to" Defendant before Defendant initiated the foreclosure process by recording a notice of default on April 18, 2019. (FAC at ¶ 11; ECF No. 9-1 at 19–21, Ex. C.) Consequently, "[a]s [Plaintiffs'] home was subject to nonjudicial foreclosure because of [Plaintiffs'] default on [their] loan, which occurred before Defendant['s] alleged wrongful acts, [Plaintiffs] cannot assert the impending foreclosure . . . was caused by Defendant['s] wrongful actions." *Jenkins v. JPMorgan Chase Bank, N.A.*, 216 Cal. App. 4th 497, 523 (2013), *as modified* (June 12, 2013), *and disapproved of in other circumstances by Yvanova v. New Century Mortg. Corp.*, 62 Cal. 4th 919 (2016).

Second, damaged credit also amounts to "property" within the meaning of the UCL for standing purposes. *See Rubio v. Capital One Bank*, 613 F.3d 1195, 1204 (9th Cir. 2010); *see also Avnieli v. Residential Credit Sols., Inc.*, No. 2:15-CV-02877-ODW, 2015 WL 5923532, at *4 (C.D. Cal. Oct. 9, 2015) (finding that "money spent preventing foreclosure on [a] home, harm to their credit, and payment of interest, legal fees, and other costs . . . easily satisfy the California Supreme Court's interpretation of section 17204"); *King v. Bank of Am., N.A.*, C-12-04168-JCS, 2012 WL 4685993, *8 (N.D. Cal. Oct. 1, 2012) ("Allegations of a diminished credit score have been found to satisfy the UCL's standing requirement."); *Aho v. AmeriCredit Fin. Services, Inc.*, 10-CV-1373-DMS, 2011 WL 2292810, *2 (S.D. Cal. June 8, 2011) (holding that UCL statutory standing was satisfied by allegations that plaintiffs' "credit report has been negatively affected by [d]efendant's reporting of the deficiency to credit reporting agencies"). However, again, Plaintiffs do not adequately explain or allege causation.

24

Third, Plaintiffs' various emotional harms are not "money or property" for the purposes of statutory standing under the UCL. *See Ha v. Bank of Am., N.A.,* No. 5:14-CV-00120-PSG, 2014 WL 6904567, at *3 (N.D. Cal. Dec. 8, 2014) (finding that "severe emotional distress, loss of appetite, frustration, fear, anger, helplessness, nervousness, anxiety, sleeplessness, sadness, and depression" do not constitute an injury under the UCL); *see also Olmos v. Bank of Am., N.A.*, No. 15-CV-2786-BAS, 2016 WL 3092194, at *4 (S.D. Cal. June 1, 2016) (finding that "embarrassment and emotional harm were insufficient" to provide standing).

Fourth, Plaintiffs' allegations of attorneys' fees and costs of suit are also not "property or money" under the UCL. *See Reichman v. Poshmark, Inc.*, 267 F. Supp. 3d 1278, 1287 (S.D. Cal. 2017); *see also Thompson v. Residential Credit Sols., Inc.*, No. CIV. 2:11-2261-WBS, 2012 WL 260357, at *5 (E.D. Cal. Jan. 26, 2012) ("attorneys' fees and costs incurred bringing a UCL claim" do not give rise to a UCL injury). A ruling to the contrary would mean that "a private plaintiff bringing a UCL claim [with the assistance of counsel] automatically would have standing merely by filing suit." *See Cordon v. Wachovia Mortg.*, 776 F. Supp. 2d 1029, 1039 (N.D. Cal. 2011).

Fifth, it is less clear to the Court whether Plaintiffs' alleged reputational harm and loss of goodwill can create standing. At least one court, for example, has recently denied a motion to dismiss a UCL claim in reliance on the plaintiff's alleged harm to "goodwill" and "reputation in the marketplace." *See Lauren Moshi, LLC v. Fuentes*, No. CV-18-6725-DMG, 2020 WL 2303081, at *5 (C.D. Cal. Jan. 17, 2020). Nonetheless, Plaintiffs do not explain what they mean by harm to their reputation or "goodwill," or articulate how such harm can be traced to Defendant's conduct. Thus, Plaintiffs' conclusory allegations fail. *See Acad. of Motion Pictures Arts & Scis. v. GoDaddy.com, Inc*, No. CV 10-3738-ABC, 2010 WL 11463697, at *10 (C.D. Cal. Sept. 20, 2010) (dismissing claim where plaintiff "only conclusory alleged the loss of a property interest, loss of goodwill,

25

and economic and financial loss due to Defendants' conduct, without alleging any specific facts as to what was lost and how").

Lastly, Plaintiffs' conclusory allegations of a "loss of money and property" do not establish standing. Plaintiffs must allege such an injury with greater specificity. *Cf., e.g.*, *Gilliam v. Bank of Am., N.A.*, No. SA-CV-17-1296-DOC, 2018 WL 6537160, at *28 (C.D. Cal. June 22, 2018) ("increased costs and fees associated with the [defendant's] wrongful activities" and the hiring of "a forensic mortgage loan auditor"); *Castaneda v. Wells Fargo Home Mortg.*, No. 2:15-CV-08870-ODW, 2016 WL 777862, at *5 (C.D. Cal. Feb. 26, 2016) (the "loss of home equity"); *Peterson v. Wells Fargo Bank, N.A.*, No. 13-CV-3392-MEJ, 2014 WL 1911895, at *7 (N.D. Cal. May 13, 2014) (money spent to improve the property in reliance on defendant's promise to modify a loan).

Consequently, the Court **GRANTS** Defendant's motion as to Plaintiffs' Fourth Cause of Action under the UCL.

### E. Fifth Cause of Action: Implied Covenant of Good Faith

Next, the Court briefly addresses Plaintiffs' Fifth Cause of Action. The elements to state a claim for breach of contract are: (1) existence of the contract, (2) performance by the plaintiff or excuse for nonperformance, (3) breach by the defendant, and (4) damages. *First Commercial Mortgage Co. v. Reece*, 89 Cal. App. 4th 731, 745 (2001). "A claim for breach of the implied covenant of good faith and fair dealing requires the same elements [as a claim for breach of contract], except that instead of showing that defendant breached a contractual duty, the plaintiff must show, in essence, that defendant deprived the plaintiff of a benefit conferred by the contract in violation of the parties' expectations at the time of contracting." *Patera v. Citibank, N.A.*, 79 F. Supp. 3d 1074, 1090 (N.D. Cal. 2015) (quoting *Levy v. JP Morgan Chase*, No. 10–01493, 2010 WL 4641033, at *3 (S.D. Cal. Nov. 5, 2010)).

The covenant of good faith and fair dealing, implied by California law in every contract, exists to prevent one contracting party from unfairly frustrating the other party's right to receive the benefits of the agreement or hindering the other party's performance. *See Guz v. Bechtel Nat'l, Inc.*, 24 Cal. 4th 317, 349 (2000). "The covenant is implied as a supplement to the express contractual covenants, to prevent a contracting party from engaging in conduct that frustrates the other party's rights to the benefits of the agreement" even if it does not technically violate the express terms of the agreement. *Waller v. Truck Ins. Exch.*, 11 Cal. 4th 1, 36 (1995).

Defendant claims that Plaintiffs' Fifth Cause of Action fails for a number of reasons, including, that no contract entitles Plaintiffs to a loan modification and that Plaintiffs do not allege how recording the notice of trustee's sale violates the implied covenant of good faith. (ECF No. 9-1 at 19–20.) Plaintiffs do not respond to these arguments, (*see generally* ECF No. 11), and thus Defendant argues in reply that "Plaintiffs concede the futility of the fifth claim." (ECF No. 12 at 16.)

In the absence of any arguments to the contrary, and having reviewed Plaintiffs' sparse pleadings here, the Court **GRANTS** Defendant's motion as to Plaintiffs' Fifth Cause of Action. "To the limited extent [Plaintiffs' FAC] addresses the covenant of good faith and fair dealing, it is vague, conclusory, and difficult to connect to the terms of any contract . . ." *See Wasjutin v. Bank of Am., N.A.*, 732 F. App'x 513, 517 (9th Cir. 2018).

### F. Sixth Cause of Action: Negligence

Finally, the Court considers Plaintiffs sixth cause of action, and addresses the Parties' two points of contention: (i) whether Defendant owed a duty of care to the Plaintiffs in handling the loan application and (ii) whether damages are adequately pled. The Court declines to decide the first issue in light of the California Supreme Court's pending decision in *Sheen v. Wells Fargo Bank*, 451 P.3d 777 (Cal. 2019), and finds damages have been adequately pled.

### 1. **Duty of Care**

"The elements of a cause of action for negligence are (1) a legal duty to use reasonable care, (2) breach of that duty, and (3) proximate [or legal] cause between the breach and (4) the plaintiff's injury." *Mendoza v. City of Los Angeles*, 66 Cal.App.4th 333, 1339 (1998) (citation omitted). "The existence of a duty of care owed by a defendant to a plaintiff is a prerequisite to establishing a claim for negligence." *Nymark v. Heart Fed. Savs. & Loan Ass'n*, 231 Cal. App. 3d 1089 (1991). "[A]bsent a duty, the defendant's care, or lack of care, is irrelevant." *Software Design & Application, Ltd. v. Hoefer & Arnett, Inc.*, 49 Cal. App. 4th 472, 481 (1996). And, in California, the "general rule" is that "a financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money." *Nymark v. Heart Fed. Sav. & Loan Assn.*, 231 Cal. App. 3d 1089, 1096 (Ct. App. 1991).

The question, however, of whether a mortgage servicer owes a duty of care to a borrower in considering an application to modify a loan, after affirmatively representing they will consider the loan application, is an undetermined question of law in California. *See Sheen v. Wells Fargo Bank, N.A.*, 38 Cal. App. 5th 346, 353 (Ct. App. 2019) ("This conflict persists.") Defendant relies on *Lueras* and *Nymak* to argue that there "there is no basis for alleging negligence" because Plaintiffs do not allege Defendant's conduct exceeded that of a traditional lender. (ECF No. 9-1 at 21–23; *see also Lueras v. BAC Home Loans Servicing, LP*, 221 Cal. App. 4th 49, 67-68 (2013) (concluding that "a loan modification is the renegotiation of loan terms, which falls squarely within the scope of a lending institution's conventional role as a lender of money."). Relying on *Alvarez* in response, Plaintiffs assert a "sea change" in California now favoring the existence of a duty in these circumstances. (ECF No. 11 at 17–19); *see Alvarez v. BAC Home Loans Servicing, L.P.*, 228 Cal. App. 4th 941, 948, 951 (2014) (concluding that California law

provides for a "duty to use reasonable care in the processing of a loan modification" given the "policy considerations" set forth under the HBOR and "because defendants allegedly agreed to consider modification of the plaintiffs' loans"). In reply, Plaintiffs raise a new argument: that *Alvarez* and its progeny are wrong because they rely on a *Biakanja v. Irving*, 49 Cal. 2d 647 (1958), and that *Biakanja* is expressly limited to situations where the Parties are not in privity. (ECF No. 12 at 16–17) (*citing Biakanja*, 49 Cal. 2d at n.2). The Papers, moreover, cite a slew of additional state and federal cases which seem to support both Parties' arguments.

Likely in recognition of this ongoing conflict, the Supreme Court of California has recently granted a petition to review the decision in *Sheen*. *See Sheen v. Wells Fargo Bank*, 451 P.3d 777 (Cal. 2019). Petitioner's reply brief is due July 20, 2020. Because the California Supreme Court's decision in *Sheen* seems likely to bear upon the Court's determination of whether there is a duty of care in the instant case, and because the underlying conduct alleged as to negligence parallels that of Plaintiffs' statutory claims such that discovery is not likely to be meaningfully different for failing to dismiss the negligence cause of action, the Court declines to adopt the position advocated for by Defendant at this time, namely, that Defendant owed no duty of care to the Plaintiffs in processing their application for a loan modification after acknowledging that, once complete, it would consider such an application. Hence, the Court will not dismiss Plaintiffs' sixth cause of action on that basis.

### 2. Damages

Assuming *arguendo* that a duty exists, the Court finds that Plaintiffs' allegations as to damages are sufficient to survive this initial pleading stage. Plaintiffs allege suffering "loss of the equity contained in the property . . . attorneys' fees and costs . . . a loss of reputation and goodwill, destruction of credit, severe emotional distress, loss of appetite, frustration, fear, anger, helplessness, nervousness, anxiety, sleeplessness, sadness, and

depression . . ." (FAC at ¶ 78.) Taking these damages together, the Court finds that Plaintiffs' allegations are sufficient. *See Dougherty v. Bank of Am., N.A.*, 177 F. Supp. 3d 1230, 1251 (E.D. Cal. 2016) (finding allegations that plaintiff "accrue[d] penalties, fees, and arrears" sufficient to establish damages in mortgage negligence claim); *Trigueiro v. Bank of Am., N.A.*, No. 2:14-CV-02556-MCE, 2015 WL 4983599, at *6 (E.D. Cal. Aug. 19, 2015) ("Plaintiffs claim a myriad of other actual damages, including destruction of credit and costs and fees incurred to save their home . . . This is more than to survive pleading scrutiny.").

Consequently, the Court **DENIES** Defendant's motion as to Plaintiffs' Sixth Cause of Action for negligence.

## IV.   Conclusion

For the foregoing reasons, the Court **GRANTS** Defendant's motion as to the Fourth and Fifth causes of action, and **DENIES** the motion as to the First, Second, Third, and Sixth causes of action. Plaintiffs' Fourth and Fifth causes of action are hereby **DISMISSED WITHOUT PREJUDICE**. Plaintiffs may file an amended complaint which addresses the deficiencies recognized in this Order on or before **July 31, 2020**.

**IT IS SO ORDERED.**

Dated: July 10, 2020

Hon. Gonzalo P. Curiel
United States District Judge