UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JESSICA FOYER, an individual; and JASON FOYER, an individual,<br><br>              Plaintiffs,<br><br>v.<br><br>WELLS FARGO BANK, N.A., a business entity; and DOES 1–50, inclusive,<br><br>              Defendants. | Case No.:  3:20-CV-00591-GPC-AHG<br><br>**ORDER DENYING DEFENDANT WELLS FARGO BANK, N.A.'S MOTION TO DISMISS SECOND AMENDED COMPLAINT**<br><br>**[ECF No. 17]** |

Before the Court is Defendant Wells Fargo Bank, N.A. ("Wells Fargo")'s Motion to Dismiss the Fourth cause of action in Plaintiffs' Second Amended Complaint (the "SAC"), which alleges that Defendants' conduct, as alleged, constitutes unfair business practices in violation of California Business and Professions Code § 17200 et seq.

Based on the SAC, moving papers and related documents, and applicable law, Defendant Wells Fargo's Motion is **DENIED**.

/ / /

1

## I. BACKGROUND

### A. Procedural Background

The case was originally filed in state court and on March 30, 2020 removed to federal court. ECF No. 1. On April 27, 2020, Plaintiffs filed the First Amended Complaint ("FAC"), which asserted six causes of action: (1) violation of California Civil Code § 2924; (2) violation of California Civil Code § 2923.7; (3) violation of California Civil Code § 2923.6; (4) violation of California Business & Professions Code § 17200; (5) breach of implied covenant of good faith and fair dealing; and (6) negligence. ECF No. 7. Wells Fargo filed a Motion to Dismiss the FAC on May 11, 2020. ECF No. 9. On July 10, 2020, the Court granted the Motion as to the Fourth and Fifth causes of action and denied the rest; on the dismissed Fourth and Fifth causes of action, the Court allowed Plaintiffs to file an amended complaint ("Order"). ECF No. 15.

On July 30, 2020, Plaintiffs filed the SAC. ECF No. 16. Subsequently on August 13, 2020, Wells Fargo filed another Motion to Dismiss, specifically moving to dismiss the Fourth cause of action pursuant to Federal Rules of Civil Procedure ("FRCP") 12(b)(6). ECF No. 17. Plaintiffs filed a Response on September 11, 2020, ECF No. 20, and Wells Fargo filed a Reply on September 25, 2020, ECF No. 22.

### B. Factual Background

Plaintiffs are the owners of a single-family home located at 706 Steffy Road, Ramona, California 92065 (the "Property"). SAC, ECF No. 16, ¶ 9. The Property serves as Plaintiffs' primary residence. *Id.* In June 2012, Plaintiffs obtained a first lien mortgage loan secured by the Property by executing a promissory note and deed of trust in favor of Prospect Mortgage, LLC in the amount of $662,774.00. *Id.* ¶ 10. Wells Fargo is the current beneficiary and servicer of the loan. *Id.*

In 2019, Plaintiffs fell behind in their mortgage payments. *Id.* ¶ 11. On April 18, 2019, a Notice of Default and Election to Sell Under Deed of Trust was recorded in the

San Diego County Recorder's Office.  Wells Fargo's Request for Judicial Notice ("RJN")[1] Ex. C, ECF No. 17-2 at 17–21.

On or around May 29, 2019, Plaintiffs submitted a "complete loan modification application" to Wells Fargo, which acknowledged receipt of the application.  SAC, ECF No. 16, ¶ 12.  On or around June 11, 2019, Plaintiffs received an email from Wells Fargo's employee, Selina, who then became Plaintiffs' "single point of contact."  *Id.* ¶ 13.  Selina informed Plaintiffs that underwriting needed additional documents; Plaintiffs submitted them the next day, June 12, 2019.  *Id.*  Over the next two weeks Plaintiffs unsuccessfully attempted to reach Selina by phone multiple times.  *Id.* ¶ 14.  Plaintiffs also emailed asking about the status of the loan modification and advising that they could not leave voice messages because the voicemail inbox was full.  *Id.*

On July 11, 2019, Plaintiffs' banking portal displayed a status of "No Open Items" as to the pending modification and listed the foreclosure status as "Suspended."  *Id.* ¶ 15.  However, by July 23, 2019, that status changed to "Active."  *Id.* ¶ 16.  Plaintiffs called and emailed Selina, whose voicemail inbox remained full, to explain that two months after submitting a loan modification application, and after being "asked to re-submit the same documents multiple times," the foreclosure status in the banking portal was now "Active."  *Id.* ¶ 17.  Instead of hearing from Selina directly, Plaintiffs received multiple messages through the banking portal that requested additional documents be submitted.  *Id.* ¶ 18.  Plaintiffs "immediately" complied, and on July 31, 2019, the foreclosure status changed back to "Suspended."  *Id.*

---

[1] The Court takes judicial notice of the four documents that have been presented as Exhibits by Wells Fargo, ECF No. 17-2.  All four documents are judicially noticeable as true and correct copies of matters of public record.  Fed. R. Evid. 201(b); *United States v. 14.02 Acres of Land*, 547 F.3d 943, 955 (9th Cir. 2008).  Plaintiffs in their Response did not object.  *See* ECF No. 20.

On August 1, 2019, Plaintiffs received an email listing several more documents needed for the loan modification review. *Id.* ¶ 19. Plaintiffs complied and uploaded the requested documents. *Id.* On August 14, 2019, Plaintiffs received an automated email message from the banking portal stating the requested documents had been received and were being reviewed. *Id.* However, on August 20, 2019, Wells Fargo again asked Plaintiffs to provide more documents—Plaintiffs did so. *Id.* ¶ 20.

On October 2, 2019, the Wells Fargo underwriters requested additional documents. *Id.* ¶ 21. Plaintiffs submitted them, both via portal and email (directly to the single point of contact). *Id.* Wells Fargo did not confirm receipt. *Id.* ¶ 22. Instead, Wells Fargo recorded a Notice of Trustee's Sale against the Property on November 27, 2019, which initially set the sale of the Property to be January 17, 2020. *Id.*; RJN Ex. D, ECF No. 17-2 at 23–24.

On January 7, 2020, the single point of contact confirmed receipt of all documents submitted in "October 2020 [sic]" and stated they were under review. SAC, ECF No. 16, ¶ 23. However, on January 9, 2020, Plaintiffs checked the bank portal and found that (1) Wells Fargo had again listed more documents to be uploaded, (2) the foreclosure was listed as "Suspended," and (3) the trustee's sale date remained to be January 17, 2020. *Id.* ¶ 24. On January 10, 2020, the displays in the bank portal stayed the same; in addition, it again listed additional documents to be submitted. *Id.* ¶ 26.

On January 13, 2020, the single point of contact informed Plaintiffs that "even more documents were needed for review," and that Plaintiffs should "call the Trustee handling the foreclosure sale for confirmation that the sale would not proceed." *Id.* ¶ 27. Plaintiffs called the Trustee, which assured Plaintiffs that the Property would not be sold on January 17, 2020, but instead on February 14, 2020. *Id.* ¶ 28. However, the Trustee refused to confirm the latter date in writing until after January 17, 2020. *Id.*

On January 14, 2020, another employee of Wells Fargo, Mr. David Mayers, contacted Plaintiffs with another list of documents needed for review. *Id.* ¶ 29. The list of documents requested by Mr. Mayers "consisted primarily of the same documents Plaintiffs previously submitted." *Id.* Nonetheless, Plaintiffs submitted the documents again on January 15, 2020. *Id.* ¶ 30.

On January 16, 2020, the online banking portal changed the foreclosure status to "Suspended" with no sale date listed. *Id.* ¶ 31. But on January 23, 2020, the online portal once again listed several documents for the Plaintiffs to upload, and the foreclosure status changed back to "Active." *Id.* ¶ 32. Plaintiffs allegedly "were perplexed" because the requested documents were "the same documents that Plaintiffs had submitted following the January 14, 2020 communication." *Id.* So the next day on January 24, 2020, Plaintiffs reached out to the single point of contact to ask if they needed to do something else, as the banking portal did not indicate that the documents were being under review and instead stated the foreclosure was active. *Id.* ¶ 33. On January 26, 2020, Wells Fargo's single point of contact responded to Plaintiffs' email regarding the document status in the portal by, once again, requesting "the same documents that Plaintiffs had already submitted." *Id.* ¶ 34.

In sum, Plaintiffs allege that despite the "ongoing loan modification application process and the numerous, voluminous and repeated requests for additional documents, to which Plaintiffs fully complied, Defendants have continued to dual track Plaintiffs and have initiated foreclosure proceedings by recording a Notice of Trustee's Sale." *Id.* ¶ 39. Plaintiffs further allege that, given the Notice of Trustee's Sale, they "have not been considered for a loan modification application." *Id.*

## II.  LEGAL STANDARD

A motion to dismiss pursuant to FRCP 12(b)(6) tests the sufficiency of a complaint, *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001), and dismissal is

warranted if the complaint lacks a cognizable legal theory, *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th Cir. 1984). A complaint may also be dismissed if it presents a cognizable legal theory yet fails to plead essential facts under that theory. *Id.* While a plaintiff need not give "detailed factual allegations," a plaintiff must plead sufficient facts that, if true, "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 547). A claim is facially plausible when the factual allegations permit "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In other words, "the nonconclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Service,* 572 F.3d 962, 969 (9th Cir. 2009). Determining the plausibility of the claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

In reviewing a motion to dismiss under FRCP 12(b)(6), the court must assume the truth of all factual allegations and must construe all inferences from them in the light most favorable to the non-moving party. *Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir. 2002). At the same time, legal conclusions need not be taken as true merely because they are cast in the form of factual allegations. *Ileto v. Glock, Inc.*, 349 F.3d 1191, 1200 (9th Cir. 2003).

When ruling on the motion to dismiss, the court may consider the facts alleged in the complaint, documents attached to the complaint, documents relied upon but not attached to the complaint when authenticity is not contested, and matters of which the court takes judicial notice. *Lee v. Los Angeles*, 250 F.3d 668, 688–89 (9th Cir. 2001).

6

3:20-CV-00591-GPC-AHG

## III.  ANALYSIS

Wells Fargo moves to dismiss with prejudice the Fourth cause of action in the SAC, which alleges a violation of California's Unfair Competition Law ("UCL"), Calif. Bus. & Prof. Code § 17200 et seq.  Wells Fargo argues that the SAC still fails to show that Plaintiffs lost money or property as a result of any unfair competition by Wells Fargo, a requirement to maintain standing for a UCL claim.  ECF No. 17-1 at 1–2; ECF No. 22 at 2.  Plaintiffs argue that UCL has a broad scope to grant standing and that specific allegations were made, including allegations on how Plaintiffs accumulated late fees and appraisal fees due to Defendants' conduct.  ECF No. 20 at 5–6.

For the reasons stated below, the Court finds that at this stage of the lawsuit, Plaintiffs have sufficiently pled to keep its UCL claim—albeit exclusive to the injuries of "late fees" and "drive by appraisal fees" that have accrued since Plaintiffs filed a complete loan modification application.  Accordingly, Wells Fargo's motion to dismiss the Fourth cause of action with prejudice is **DENIED**.

### A.   Requirements for Standing

To have standing to sue under UCL, a plaintiff must have "suffered injury in fact and ha[ve] lost money or property as a result of the unfair competition." Calif. Bus. & Prof. Code § 17204.  To satisfy this requirement, Plaintiffs must "(1) establish a loss or deprivation of money or property sufficient to qualify as injury in fact, i.e., economic injury, and (2) show that the economic injury was the result of, i.e., caused by, the unfair business practice or false advertising that is the gravamen of the claim." *Kwikset Corp. v. Superior Court*, 246 P.3d 877, 885 (Cal. 2011).

Plaintiffs argue that UCL's scope is broad, *see* ECF No. 20 at 5–6, but they are conflating what practices are actionable under UCL versus who may sue under it.  The Court has already decided that Plaintiffs have sufficiently alleged that Defendants' actions violated the UCL. ECF No. 15 at 22–23.  However, even if Defendants' actions

violate UCL, Plaintiffs must establish that a valid injury-in-fact occurred because of those actions.

### B. Ineligible Injuries

Accordingly, the Court will assess each alleged injury to determine if it meets the injury-in-fact standard. The Court first observes that even after the Court permitted an amendment to the FAC, the SAC has repeated many of the allegations with little substantive change. *See generally* Redline Version of Am. Compl., ECF No. 23 (tracking the changes made between the FAC and the SAC). With little changes made in the SAC, most of the SAC's alleged injuries remain inadequate to justify Plaintiffs' standing.

To start, this Court has already ruled that Plaintiffs' various emotional harms and attorney's fees and costs of suit do not constitute "money or property" for the purposes of statutory standing under UCL. ECF No. 15 at 25. The SAC repeats these injuries with no change. *See* ECF No. 23 at 10. And since the underlying law has not changed either, this Court rejects them again.

This Court also has already ruled that Plaintiffs' allegation of loss of "reputation and goodwill" is conclusory, ECF No. 15 at 25–26, and the SAC makes little change that would make the Court reconsider this time, *see* ECF No. 23 at 10. The Court found Plaintiffs' allegation conclusory because the FAC did not explain what the harm termed "loss of reputation and goodwill" means—the SAC does not either. In addition, the Court concluded that Plaintiffs in their FAC could not articulate how the harm can be traced to Defendants' conduct. The SAC barely moves the needle. Even if "Defendants' wrongful activities" have "increased [Plaintiffs'] costs and fees," the SAC stays silent on how those increased costs and fees affected Plaintiffs' reputation and goodwill. Thus, Plaintiffs' alleged reputational harm and loss of goodwill remain conclusory.

The SAC newly asserts that "damage to [Plaintiffs'] credit . . . has occurred while Plaintiffs have been awaiting a determination on their application." ECF No. 16, ¶ 63.

8

But that passage is the only new addition made in the SAC that explicitly discusses credit. It is still conclusory to just assert that Plaintiffs' credit got hurt while they waited. Absent more showing, the Court continues to wonder *how* Defendants' actions resulted in the damaged credit while pending the loan modification application.

Plaintiffs did make substantive amendments on their home ownership claim. The SAC's amended assertion is that the monthly "accumulated fees"—which consist of "late fees" and "drive by appraisal fees" that are wholly due to Defendants' wrongful conduct—resulted in "loss of equity" and "imminent loss of their home." ECF No. 16, ¶ 63. Wells Fargo argues that these claims are still invalid because the loss of equity and imminent loss of the Property are the result of Plaintiffs defaulting on their loans. ECF No. 17-1 at 4; ECF No. 22 at 3. Plaintiffs re-assert in their Response that the unlawful conduct prevented the sale of their home. ECF No. 20 at 6.

The Court concludes that in spite of the amendments in the complaint, the loss of Property and equity that occurred because of Plaintiff's default before Defendant's wrongful acts cannot be traced to Defendants' conduct. *See Toneman v. U.S. Bank, Nat'l Ass'n for Bear Stearns Asset Backed Sec. Tr. 2004-AC7*, No. CV1209369MMMMRWX, 2013 WL 12132049, at *22 (C.D. Cal. Oct. 21, 2013), *aff'd sub nom. Toneman v. U.S. Bank NA*, 628 F. App'x 523 (9th Cir. 2016). "Plaintiffs fell behind in their mortgage payments" to Wells Fargo before Wells Fargo initiated the foreclosure process by recording a Notice of Default on April 18, 2019. SAC, ECF No. 16, ¶ 11; RJN Ex. C, ECF No. 17-2 at 17–21. Since the "[Plaintiffs'] home was subject to nonjudicial foreclosure because of [Plaintiffs'] default on [their] loan, which occurred before Defendants' alleged wrongful acts, [Plaintiffs] cannot assert the impending foreclosure . . . was caused by Defendants' wrongful actions." *Jenkins v. JPMorgan Chase Bank, N.A.*, 216 Cal. App. 4th 497, 523 (2013), *as modified* (June 12, 2013), *disapproved of in other circumstances by Yvanova v. New Century Mortg. Corp.*, 62 Cal. 4th 919 (2016).

Given that the loss of equity and potential loss of Property already occurred, and since no part of the SAC alleges that Plaintiffs remedied the default by paying off the due loans, this alleged injury still cannot be grounds for a UCL claim even under the construction of factual allegations and inferences most favorable to the non-moving party.  Finally, late fees and drive-by appraisal fees caused by the default that preceded the complete loan modification application similarly cannot be traced to Defendants' conduct.

### C.   Late Fees and Appraisal Fees

But there are inherent financial and monetary implications from "late fees, drive by appraisal fees, etc. that continue to accumulate on the loan on a monthly basis while Plaintiffs await a determination on their loan modification application," ECF No. 16, ¶ 63.  Needing to pay fees that one would otherwise not owe plainly constitutes "lost money" under Section 17204 of UCL.  *See, e.g.*, *Gilliam v. Bank of Am., N.A.*, No. SACV171296DOCJPRX, 2018 WL 6537160, at *28 (C.D. Cal. June 22, 2018) (acknowledging "increased costs and fees" as injury-in-fact); *Guillermo v. Caliber Home Loans, Inc.*, No. C 14-04212 JSW, 2015 WL 4572398, at *5 to *6 (N.D. Cal. July 29, 2015) (finding "late fees" and "incurred fees" from a postponed sale as constituting injury-in-fact); *Gardenswartz v. SunTrust Mortg., Inc.*, No. CV 14-08548 SJO RZX, 2015 WL 900638, at *8 (C.D. Cal. Mar. 3, 2015) (recognizing "unwarranted interest and penalties" as injury-in-fact).

The remaining question is whether Plaintiffs have sufficiently alleged such fees are "the result of, i.e., caused by, the unfair business practice," *Kwikset Corp. v. Superior Court*, 246 P.3d 877, 885 (Cal. 2011).  Under the construction of facts and inferences most favorable to Plaintiffs, the Court finds that the *accumulated* fees were caused by Defendants' actions, specifically dual tracking and the violation of the "single point of contact rule."  On dual tracking, Plaintiffs sufficiently pled that Wells Fargo unduly

delayed consideration of their loan modification application.  *See* Order, ECF No. 15 at 21–22; *see also* SAC, ECF No. 16 at 4–6.  Similarly, on the single point of contact rule, Plaintiffs have sufficiently alleged that the patterns of untimely/inadequate responses and the vague/contradictory information provided have unduly prolonged the loan modification process.  *See* Order, ECF No. 15 at 14–15; *see also* SAC, ECF No. 16 at 3–6.  And throughout these undue delays and prolongations, Plaintiffs incurred fees that they otherwise would not have.

Wells Fargo argues in its Motion and Reply that these fees cannot be fairly traced to Defendants' conduct because Plaintiffs had a preexisting duty to pay the mortgage loan—in other words, Plaintiffs' default triggered the fees.  ECF No. 17-1 at 4; ECF No. 22 at 3–4; *see also Jenkins v. JPMorgan Chase Bank, N.A.*, 216 Cal. App. 4th 497, 523 (2013) (holding that when foreclosure is caused by a pre-existing default, no causation to injury of loss of home is shown), *as modified* (June 12, 2013), *and disapproved of in other circumstances by Yvanova v. New Century Mortg. Corp.*, 62 Cal. 4th 919 (2016).  This is partially correct.  The late fees and drive-by appraisal fees that accrued *before* Plaintiffs allegedly submitted a complete loan modification application are not eligible injuries for the purposes of UCL standing.

However, once Plaintiffs submitted a complete loan modification application, Defendants had a newly created duty to: (1) "timely, accurately, and adequately inform the borrower of the current status of the foreclosure prevention alternative," Cal. Civ. Code § 2923.7(b)(3), and (2) "not . . . conduct a trustee's sale, while the complete first lien loan modification application is pending," Cal. Civ. Code § 2923.6(c).  And construing the facts and inferences most favorable to Plaintiffs, the SAC sufficiently pleads that the amount of fees Plaintiffs owe would at the very least be lower had Defendants not violated those provisions, i.e. processed the application in a timely manner.  That difference in payable fees is solely due to Defendants' actions and is thus a

valid injury-in-fact. *See, e.g.*, *Smith v. Specialized Loan Servicing, LLC*, No. 16CV2519-GPC(BLM), 2017 WL 1711283, at *8 (S.D. Cal. May 3, 2017) (finding that plaintiff sufficiently alleged standing for a UCL claim on "marked up charges, excessive fees, and incurred administrative costs due to Defendant's failure to properly comply with the loss mitigation regulations").

The case law Wells Fargo has provided do not dispute that fees resulting from Defendants' undue delays are actionable under UCL, even if Plaintiffs defaulted. Wells Fargo first cites *Sutcliffe v. Wells Fargo Bank, N.A.*, 283 F.R.D. 533, 553 (N.D. Cal. 2012), where the court agreed that "preexisting duty to make payments on [Plaintiffs'] loan" does not constitute damages. Wells Fargo also cites *Reyes v. Wells Fargo Bank, N.A.*, No. C-10-01667 JCS, 2011 U.S. Dist. LEXIS 2235, at *48 (N.D. Cal. Jan. 3, 2011), which functionally states the same: "where the money paid under an agreement was already owed under a prior agreement, it . . . cannot support a [breach of contract] claim for damages." However, the mortgage loan already owed is not at issue—Plaintiffs do not contest that. Instead, what is at issue is the *newly accrued* late fees and appraisal fees due to Defendants' allegedly undue delays. In fact, the immediately following passage in *Sutcliffe* states, "an increase in the principal amount owed on the loan, as a result of Wells Fargo's failure to offer them a permanent modification upon the successful completion of the [loan modification program trial period]" sufficiently qualifies as damages. 283 F.R.D. at 553. Case law provided by Wells Fargo clearly distinguishes between what Plaintiffs already owe versus what they do not need to owe.

Wells Fargo appears to argue that the mortgage agreement has functionally "contracted out" UCL claims that may arise from fees that resulted from Wells Fargo unduly delaying the loan modification process. *See* ECF No. 22 at 3 ("What's more, plaintiffs agreed to pay foreclosure-related costs upon their delinquency."). Under this legally unsupported theory, Plaintiffs have "agreed" to pay *all* foreclosure-related costs if

they default—which would include all late fees and appraisal fees, regardless of Defendants' illegal conduct. Wells Fargo does not cite to any specific RJN to make this claim, and the inference most favorable to Plaintiffs based on the SAC's allegations is that Plaintiffs never agreed to such an arrangement. *See* ECF No. 16, ¶ 63.

In its Reply Brief, Wells Fargo also presents a string of case law that generally discusses "proximate cause" as a legal concept. ECF No. 22 at 4. But Wells Fargo never connects the dots. The Reply never explains (1) how Defendants' conduct is not the proximate cause of the injury, and (2) if UCL claims even need a showing of proximate cause. The Court will not do this work for Wells Fargo. Instead, it leaves with this: based on the allegations, the delays in processing loan modifications, in their "natural and continuous sequence, unbroken by an efficient intervening cause," *Parker v. City & Cty. of San Francisco*, 158 Cal. App. 2d 597, 607 (1958), increased fees for Plaintiffs.

Finally, Wells Fargo argues that the equitable nature of UCL prohibits recovery of damages. *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1144 (2003). That same case acknowledges restitution under UCL as an appropriate remedy. *Id.* Restitution in the context of a UCL claim is defined as "compelling a UCL defendant to return money obtained through an unfair business practice to those persons in interest from whom the property was taken, that is, to persons who had an ownership interest in the property or those claiming through that person." *Id.* at 1144–45. Here, the SAC has sufficiently pled that Plaintiffs are at least entitled to restitution, which would be recovering the late fees and appraisal fees they paid to Defendants due to Defendants' delays in processing the complete loan modification application.

///

## IV. CONCLUSION AND ORDER

For the foregoing reasons, the Court **DENIES** Defendant Wells Fargo's Motion to Dismiss the Plaintiffs' Fourth cause of action in their Second Amended Complaint. The hearing set before this Court for October 9, 2020 is hereby **VACATED**.

**IT IS SO ORDERED.**

Dated:  October 6, 2020

Hon. Gonzalo P. Curiel
United States District Judge